## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**SHEILA M. BRUCELAS-RODRIGUEZ**,
　　　　Plaintiff,

　　　v.

**COMMISSIONER OF SOCIAL
SECURITY**,
　　　　Defendant.

Civil No. 21-1619 (BJM)

### OPINION & ORDER

　　　Sheila M. Brucelas-Rodriguez ("Brucelas-Rodriguez") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Brucelas-Rodriguez contends the administrative law judge ("ALJ") wrongly determined her physical and mental residual functional capacity ("RFC") and failed to properly address the side effects of her prescribed medication. Docket No. ("Dkt.") 17. The Commissioner opposed. Dkt. 20. This case is before me by consent of the parties. Dkts. 5, 8. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### APPLICABLE LEGAL STANDARDS

　　　After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health &*

*Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the

Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the Fifth and final Step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings.

On December 16, 2016, Brucelas-Rodriguez filed an application for disability insurance benefits. Tr. 716–19. She alleged her disability onset date was February 1, 2016. *Id.* Brucelas-Rodriguez was born in 1979. Tr. 716. She obtained a high school GED, Tr. 102, 121, and previously worked as a salesclerk and phone operator. Tr. 90. Her date last insured was June 30, 2019. Tr. 81. The Commissioner denied Brucelas-Rodriguez's application for benefits initially, on reconsideration, and after a hearing before an ALJ. Tr. 129, 133–35, 73. The record before the Commissioner, which included medical evidence and Brucelas-Rodriguez's self-reports is summarized below.

### A.  Medical History

***Treating Physicians – Physical***

#### Degetau MRI & CT

An August 2016 scan of Brucelas-Rodriguez's hands showed mild synovial thickening with no erosions or hypervascularity. Tr. 830. Additionally, it showed normal bone and joint structures in the hands, wrists, knees, and pelvis. Tr. 831. Further, it found normal bone structure and vertebral alignment in the lumbosacral spine. Tr. 832. However, there was a straightening of lumbar lordosis suggesting a muscular spasm. *Id.*

#### Dr. Julio A. Rodriguez Padilla (Neuro-Ophthalmologist)

Dr. Rodriguez Padilla examined Brucelas-Rodriguez's eyes in September 2016 and found normal results. Tr. 823–24.

### Centro Policlínico del Carmen

A June 2016 blood test showed normal results except for a low mean platelet volume. Tr. 833. A blood test in August showed no abnormalities. Tr. 828–29. An October test found a low red blood cell count but otherwise normal results. Tr. 846–49. December tests found normal results aside from high cholesterol. Tr. 856–58, 861. A March 2017 test found normal results. Tr. 1005–09. Tests in November 2017 found high cholesterol and low mean platelet volume, but otherwise normal results. Tr. 1095–1104. A February 2018 test also showed high cholesterol. Tr. 1128.

A June 2016 MRI showed findings suggestive of multiple sclerosis. Tr. 837. A July MRI showed no evidence of herniated nucleus pulposus, no stenosis of the spinal canal and normal intervertebral foramina. Tr. 838. A July eye examination showed normal functioning of the primary visual pathways to the optic chiasm. Tr. 835. A September 2016 lab test found results supportive of multiple sclerosis but recommended evaluating the results in conjunction with other tests before coming to a final determination. Tr. 841. A March 2017 MRI found a very small central disc bulge, no intramedullary lesions present, and no evidence of a herniated or protruded disc. Tr. 926.

### Dr. David Blas Boria (Neurologist)

Dr. Blas Boria conducted an examination in February 2017 and found Brucelas-Rodriguez had tenderness to palpitation all over her body, but did not have focal motor deficits. Tr. 901. Dr. Blas Boria also found Brucelas-Rodriguez could sit, stand, walk, travel, and handle and lift common objects. *Id.* He further found she had a normal gait with no strength atrophy. Tr. 903.

### Corporación SANOS

Brucelas-Rodriguez visited Corporación SANOS in August 2016 and was assessed as having multiple sclerosis and cervicalgia. Tr. 915. In October of that year, she was also diagnosed

with an idiopathic peripheral autonomic neuropathy. Tr. 917. In April 2017, she was diagnosed with obesity. Tr. 920.

**Dr. Hector Delucca**

Brucelas-Rodriguez visited Dr. Delucca in April 2017 reporting constant pain that she rated a nine out of ten in intensity. Tr. 985. She reported the pain worsened during periods of increased activity and improved when she rested. *Id.* Dr. Delucca observed that Brucelas-Rodriguez's pain was more persistent in her central cervical spine and noted the left paracervical had not improved despite treatment. Tr. 987. In May, he performed a fluoroscopic cervical facet joint injection and recommended following up in two weeks. *Id.*, Tr. 990. He also prescribed 50 milligrams of Tramadol. *Id.* At the follow-up appointment, Brucelas-Rodriguez reported her pain had improved 60 percent and that the frequency and severity had both decreased. Tr. 992. She stated that the medication relieved 30 percent of her pain and she had no side effects. *Id.* Accordingly, she said her ability to engage in activities had improved. *Id.*

**Dr. Eric Ramirez Diaz**

In an August 2016 examination, Dr. Ramirez Diaz noted Brucelas-Rodriguez had cervicalgia, dorsal-spine pain, low-back pain, back spasms, left-shoulder pain, and left-knee pain. Tr. 1088. In October 2016, Dr. Ramirez Diaz did a nerve conduction study of Brucelas-Rodriguez which showed evidence of bilateral sensory median focal neuropathy and bilateral ulnar slowing across her elbow. Tr. 1051. He further noted she had knee pain, right- and left-shoulder pain, multiple sclerosis, and rheumatoid arthritis. Tr. 1080. Additionally, he found cervical, lumbar, and thoracic muscle inflammation. *Id.* Brucelas-Rodriguez received injections and physical therapy for her pain over the next several months. Tr. 1063–1079. While this helped, she then experienced cervical pain that radiated to her left arm in April 2017. Tr. 1063. By May, it had improved

somewhat. Tr. 1061. She later developed numbness and paresthesia in her left leg. Tr. 1054. Though continuing with physical therapy through December 2017 helped with pain, it also proved painful in itself. *Id.*

In December 2018, Brucelas-Rodriguez reported pain in her back and neck. Tr. 1323–28. She reported this, along with hip pain and pain in her left shoulder in January 2019. Tr. 1322. She reported back pain in February, but could stand, sit, and walk independently. Tr. 1319–21. However, she had moderate pain and muscle spasms, limited range of motion, and moderate inflammation. *Id.* She received an identical assessment in March, but also reported neck and shoulder pain at that time. Tr. 1317–18. In April, she reported increased pain and weakness in her left arm and leg. Tr. 1316. In June, she reported that walking caused painful swelling on her left side and in her knee. Tr. 1314. These symptoms persisted through July and August. Tr. 1310–13.

### NuScan

In August 2017, Brucelas-Rodriguez had a non-invasive venous duplex evaluation which showed no evidence of deep or superficial venous thrombosis bilaterally, but did show mild deep venous insufficiency and severe superficial venous insufficiency in the left leg. Tr. 1094.

### Dr. Anaida Nadal

A June 2017 MRI of Brucelas-Rodriguez's brain showed focal hyperintensities in the right frontal periventricular white matter compatible with a history of multiple sclerosis. Tr. 1374. Diagnostic tests in February 2018 showed normal glucose levels and high cholesterol. Tr. 1164–65. A blood test that month showed normal results except for low mean platelet volume. Tr. 1167. A thyroid sonogram that month showed goiter and a small cyst on the right lobe. Tr. 1171. An April 2018 blood tests showed low white and red blood cell counts, low mean platelet volumes, and below average lymphocytes. Tr. 1199. October 2018 tests showed similar results. Tr. 1412–

16. A June 2019 test showed a low white blood cell count, red cell distribution width, mean platelet volume, and lymphocytes differential. Tr. 1254. It also showed high cholesterol. Tr. 1255. Otherwise, her results fell within the normal ranges. Tr. 1250.

### Dr. Zaida Boria

Dr. Boria examined Brucelas-Rodriguez in September 2018 and found her symptoms correlated with her multiple sclerosis diagnosis. Tr. 1216–19. She further found Brucelas-Rodriguez could grip, grasp, pinch, pick up a coin, write, button a shirt, and tap her fingers. Tr. 1221. She further found Brucelas-Rodriguez could complete all but one range-of-motion exercise. Tr. 1222–1223. This limitation was due to her obesity. Tr. 1222. Lastly, an examination of Brucelas-Rodriguez's lumbosacral spine revealed mild osteoarthritis with a lumbar spasm. Tr. 1224.

### Dr. Yadira Dacosta Santaella

In May 2017, Dr. Dacosta Santaella wrote a letter requesting an MRI for Brucelas-Rodriguez stating, "[d]ue to the condition of Multiple Sclerosis, the patient may present muscle fatigue, general weakness, imbalance, difficulty walking, spasticity, urinary urgency and frequency, memory problems, vision problems, among other symptoms." Tr. 262. In November 2018, Dr. Dacosta Santaella found Brucelas-Rodriguez had stable multiple sclerosis symptoms and recommended continuing with her current treatment as well as starting to take baclofen. Tr. 1448. Her symptoms remained unchanged in February 2019 and she reported no side effects from taking Gilenya. Tr. 1450. However, Brucelas-Rodriguez stated she felt tremors after standing for long periods of time. *Id.* Dr. Dacosta Santaella noted Brucelas-Rodriguez was stable and recommended continuing with the current treatment plan. Tr. 1451. In May, Brucelas-Rodriguez reported a pressure sensation in her neck for which she had received steroids. Tr. 1453. Her brain

and c-spine MRIs were negative, but Dr. Dacosta Santaella recommended a t-spine MRI. Tr. 1454. That August, Brucelas-Rodriguez had intermittent tremors, low back pain, and right leg pain. Tr. 1456. Because her symptoms improved with Neurontin, Dr. Dacosta Santaella recommended increasing her dose. Tr. 1456–57.

### Hospital HIMA San Pablo

An April 2019 cervical spine MRI showed Brucelas-Rodriguez had mild multilevel degenerative disc disease which was worse at C5-C6 and C6-C7 levels. Tr. 1249. She was advised to obtain a follow-up examination. *Id.*

*Treating Physicians – Mental*

### Dr. Jose R. Rodríguez Cay

In May 2017, Dr. Rodríguez Cay diagnosed Brucelas-Rodriguez with major depressive disorder, recurrent, moderate. Tr. 1034–35. However, he found she was orientated in person, place, and time; had coherent, logical, and relevant thoughts; denied suicidal ideation, homicidal ideation, and hallucinations; and spoke in an appropriate tone. Tr. 299–300. He made similar findings at follow-up appointments two and four weeks later. Tr. 293–98.

In June 2017, he diagnosed Brucelas-Rodriguez with generalized anxiety disorder. Tr. 1024–25. At that time, he noted she seemed both depressed and anxious. Tr. 1025. In July, he found Brucelas-Rodriguez had poor attention and visual contact; was depressed, anxious, and irritable; had poor judgment and introspection; and experienced problems concentrating. Tr. 286. However, she was oriented in person, place, and time; dressed appropriately; had appropriate affect based on thought content; was coherent, logical, and relevant; denied suicidal and homicidal ideation; denied hallucinations; and showed fair immediate, recent, and remote memory. *Id.*

Brucelas-Rodriguez showed similar behavior in August and September 2017, but Dr. Rodriguez Cay did not note any anxiety at those times. Tr. 1146, 1149.

From October 2017 through May 2018, Dr. Rodriguez Cay observed that Brucelas-Rodriguez was anxious, but that she otherwise remained unchanged. Tr. 1135, 1137, 1139, 1141, 1143, 1242. In July, Dr. Rodriguez Cay did not note that Brucelas-Rodriguez was anxious. Tr. 1235. Otherwise, her behaviors remained unchanged. *Id.* In August and September, he noted she was depressed, but that her symptoms were stable and she had shown no side effects from medication. Tr. 1224, 1230. In October, he noted she was anxious, but otherwise unchanged. Tr. 1288–89. Her status was unchanged in November, Tr. 1283–84, and December. Tr. 1280.

In January 2019, Dr. Rodriguez Cay stated Brucelas-Rodriguez remained anxious and depressed and her condition had not changed. Tr. 1276–77. The same was true in February, Tr. 1273, March, Tr. 1267, April, Tr. 1264, and May. Tr. 1258–59.

### Dr. Madeline Santos Carlo

In August 2018, Dr. Santos Carlo evaluated Brucelas-Rodriguez and found she had adequate speech; consistent thought flow; adequate attention and correct orientation to time, place, and self. Tr. 386. She further found Brucelas-Rodriguez's memory was impressive and her general knowledge was adequate. Tr. 387. Dr. Santos Carlo likewise found Brucelas-Rodriguez's ability to associate, her judgment, and her insight were adequate. *Id.*

### B.  Procedural History

On September 10, 2019, Brucelas-Rodriguez appeared at a hearing before an ALJ. Tr. 101. She testified that she suffered from multiple sclerosis, rheumatoid arthritis, poor circulation in both legs, and an ocular migraine. Tr. 107–09. She further stated she suffered from an emotional

condition for which she was prescribed Cymbalta, Ambien, and Klonopin. Tr. 110. She reported sleeping better with this medication, but stated she had lost motivation. Tr. 111.

Brucelas-Rodriguez testified that, since 2016, she spent all day lying down, did not do household chores or cook, and that her husband took care of the couple's two children. Tr. 111–12. While lying down, she did not watch television because she was no longer interested in anything and did not read because it strained her eyes. Tr. 115. She further said she could not put her hair in a bun or put on her shoes due to weakness in her hands and back pain. Tr. 115. She stated she stopped driving a few months before Hurricane Maria because she would get very nervous, feel cramps, and lose feeling in her legs. Tr. 111–12. However, she stated she still went out to eat with her husband. Tr. 112. She testified that, for the past two years, she could not lift a gallon of water without her hands shaking. Tr. 113. Further, she stated she could only sit or stand for 30 to 40 minutes and could only walk for five minutes because she lacks stability and goes sideways. Tr. 113–14, 116. She stated she could not work due to the tremors and weakness she felt in her legs, the shock sensations she felt in her body, her heavy head, and the overall pain she experiences. Tr. 114. She characterized the pain as constant and rated it as an eight or nine out of 10. Tr. 116. Though she took pain medication, she testified that it did not relieve her symptoms and made her feel sleepy, dumb, slow, and very thirsty. Tr. 116.

A medical expert, Dr. Amarilis Serrano, also testified. Tr. 117. Dr. Serrano testified that Brucelas-Rodriguez's mental condition did not meet or equal Listing 12.04. Tr. 118. She considered the Listing's paragraph A and B criteria. *Id.* She stated Brucelas-Rodriguez could perform simple, repetitive, routine tasks; maintain concentration, persistence and pace while performing those tasks eight hours a day, five days a week; understand, remember, and carry out simple instructions; and adapt to simple changes at work. Tr. 119. Dr. Serrano found Brucelas-

Rodriguez had no social limitations and needed no help managing money. *Id.* She further found Brucelas-Rodriguez's anxiety failed to meet Listing 12.06, which requires claimants demonstrate at least three listed symptoms, because Brucelas-Rodriguez only showed difficulty concentrating. Tr. 120.

Next, a Vocational Expert ("VE"), identified as Ms. Woodham, testified. Tr. 99, 120. The ALJ asked the VE to consider a hypothetical person with Brucelas-Rodriguez's age, vocational profile, experience, and education. Tr. 121. The ALJ further qualified that this person could lift, carry, push, and pull 20 lbs. occasionally and 10 lbs. frequently; sit for six hours in an eight-hour workday with normal breaks; and stand and walk four hours in that workday. *Id.* Further, she can climb stairs and ramps frequently; she can balance and stoop frequently; and she can kneel, crouch, and crawl occasionally. Tr. 121–22. Additionally, she can be around moving mechanical parts occasionally. Tr. 122. However, she can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights. Tr. 121–22. The VE stated that such a person could not perform Brucelas-Rodriguez's past job as a salesclerk, but could perform her previous work as a telephone operator because that job was sedentary. Tr. 122.

The ALJ next asked the VE to imagine someone with Brucelas-Rodriguez's background, physical limitations, and the ability to perform simple, repetitive, routine tasks; perform these tasks five days a week, eight-hour workday with normal breaks; maintain concentration, persistence, and pace; understand, remember, and carry out simple instructions; and handle simple changes in the work setting. Tr. 122. The ALJ asked the VE whether this person could perform Brucelas-Rodriguez's previous jobs and the VE respond that she could not. *Id.* However, the VE testified such a person could work as a charge account clerk and call out operator. Tr. 123.

The ALJ then modified the hypothetical person's physical limitations, reducing the weightlifting ability to 10 lbs., lowering the standing and walking time to two hours in an eight-hour workday, and stating the person could never be around moving mechanical parts. Tr. 124. The VE testified that, with no mental limitations, this person could perform Brucelas-Rodriguez's previous work as a telephone operator. Tr. 124. Further, the VE stated a person with these physical limitations and the previously mentioned mental limitations could perform the charge account clerk and call out operator positions. *Id.*

The ALJ then asked the VE to consider someone with the above physical and mental limitations who could perform handling, fingering, and feeling frequently and reach above her shoulder and in any direction frequently. Tr. 125. The VE responded that such a person could not work as a telephone operator because that job requires constant handling. *Id.* However, the VE said such a person could work as a call out operator, document preparer, and charge account clerk. Tr. 126. Upon questioning by Brucelas-Rodriguez's attorney, the VE stated that a person with her background and the physical and mental limitations outlined by the ALJ could not perform any of the VE's mentioned jobs if they were off-task more than 15 percent of the time and absent two to three days per month. Tr. 127.

The ALJ announced her decision on October 30, 2019. Tr. 73. The ALJ found that Brucelas-Rodriguez had not engaged in substantial gainful activity since the alleged onset date and had the following severe impairments: multiple sclerosis; rheumatoid arthritis; degenerative disc disease of the cervical and lumbar spines; bilateral carpal tunnel syndrome; superficial venous insufficiency in the left leg; obesity; and major depressive disorder. Tr. 81.

At Step Three, the ALJ found Brucelas-Rodriguez did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.*

The ALJ considered Listings 1.02, 1.04, 14.09, 11.09, 7.08, and 12.04 and found Brucelas-Rodriguez did not meet the listed criteria. Tr. 82–84. The ALJ said Brucelas-Rodriguez did not meet Listing 1.02 because she did not show she suffered from an inability to ambulate effectively or an inability to perform fine and gross movements effectively. Tr. 82. The ALJ said Brucelas-Rodriguez did not meet Listing 1.04 because the record showed no evidence of motor loss, muscle atrophy or weakness, sensory or reflex loss, or a positive straight leg-raising test. *Id.* On the contrary, the ALJ found Brucelas-Rodriguez retained the ability to ambulate effectively and perform fine and gross motor movements. *Id.* Further, there was no evidence of spinal arachnoiditis or lumbar spinal stenosis; records showed Brucelas-Rodriguez's gait was normal; and she had full motor strength, full deep tendon reflexes, and no limitations in her spine's range of motion. *Id.* Also, she could grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. *Id.*

The ALJ then found Brucelas-Rodriguez did not satisfy Listing 14.09, addressing inflammatory arthritis, because her symptoms did not prevent her from ambulating effectively or performing fine and gross movements effectively. *Id.* Further, the ALJ found Brucelas-Rodriguez's symptoms did not involve two or more organs or body systems, one of which was at least moderately severe. *Id.* Additionally, the ALJ found no evidence of repeated manifestations with at least two constitutional symptoms or signs. Also, Brucelas-Rodriguez did not show at least marked level limitations in activities of daily living, maintaining social functioning, and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.*

Next, the ALJ found Brucelas-Rodriguez's multiple sclerosis symptoms did not meet or equal Listing 11.09. *Id.* She found the record showed no disorganization of motor function in two extremities resulting in an extreme limitation in standing from a seated position, balancing while

standing or walking, or using the upper extremities. *Id.* Further, the ALJ found the record lacked evidence of a combination of marked limitation in physical functioning and marked limitation in either understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id.*

Additionally, the ALJ found Brucelas-Rodriguez did not meet Listing 7.08 because the record showed no complications requiring at least three hospitalizations in a 12-month period and at least 30 days apart prior to adjudication. *Id.* The ALJ further stated she evaluated Brucelas-Rodriguez's obesity under the SSR 19-2p guidelines and determined its effects did not combine with her other impairments to meet or equal a Listing. Tr. 83.

Lastly, the ALJ found Brucelas-Rodriguez's mental impairment did not meet or equal Listing 12.04. *Id.* The ALJ did not mention the paragraph A criteria. Moving to paragraph B, the ALJ found Brucelas-Rodriguez had moderate limitations understanding, remembering, and applying information. *Id.* The ALJ observed that 2017 progress notes showed Brucelas-Rodriguez had a coherent, logical, and relevant thought process; denied suicidal thoughts and hallucinations; and had regular immediate, recent, and remote memory. *Id.* Further, during a 2018 examination, she could repeat the months of the year forward and backward and could perform simple calculations. *Id.* And in 2019, she showed no deficiency with immediate, recent, and remote memory. *Id.* The ALJ found Brucelas-Rodriguez had mild limitations interacting with others because she testified she lived with her husband and children and maintained cordial relationships with family and neighbors. *Id.*

Next, the ALJ found Brucelas-Rodriguez had moderate limitations concentrating, persisting, or maintaining pace. The ALJ cited 2017 progress notes showing Brucelas-Rodriguez had a coherent, logical, and relevant thought process; denied suicidal thoughts and hallucinations;

and had regular immediate, recent, and remote memory. *Id.* The ALJ cited the 2018 examination where Brucelas-Rodriguez adequately performed the similar words test, could repeat the months of the year forwards and backwards, and could perform simple calculations. *Id.* Further, she cited 2019 treatment notes showing Brucelas-Rodriguez had no issues with immediate, recent, and remote memory; could use a phone; groomed herself and prepared her own meals; and managed her own medications. *Id.*

Lastly, the ALJ found Brucelas-Rodriguez had mild limitations adapting and managing herself. Tr. 84. The ALJ noted that no records showed Brucelas-Rodriguez had been hospitalized, visited an emergency room, or been placed in an assisted living facility due to her symptoms. *Id.* Further, the ALJ repeated her observation that Brucelas-Rodriguez had no issues using a phone, grooming herself, preparing her own meals, and managing her medications. *Id.*

The ALJ then found Brucelas-Rodriguez did not meet the paragraph C criteria because she experienced no episodes of decompensation, there was no evidence that a minimal increase in mental demands or a change in environment would cause her to decompensate, she had no history of ever living in a highly supportive living arrangement, and there was no indication of any need for such an arrangement. *Id.*

In determining Brucelas-Rodriguez's RFC, the ALJ noted she had multiple sclerosis, rheumatoid arthritis, degenerative disc disease of the cervical and lumbar spines, bilateral carpal tunnel syndrome, superficial venous insufficiency in the left leg, and obesity. Tr. 85. However, the ALJ noted that Brucelas-Rodriguez could manage her symptoms with noninvasive treatment despite flare-ups in pain. *Id.* Additionally, the ALJ noted the record showed no significant neurological diminishment. *Id.* The ALJ cited Dr. Rodriguez's September 2016 report stating Brucelas-Rodriguez had no neuro-ophthalmological manifestations. *Id.* Further, the ALJ noted a

February 2017 examination showed that, despite Brucelas-Rodriguez's rheumatoid arthritis diagnosis, obesity, and tenderness throughout her body, she had normal gait, full motor strength, full deep tendon reflexes, and no limitation in her spine's range of motion. *Id.* Further, she could grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. Tr. 86. After she complained of pain during an April 2017 examination, Dr. Delucca increased her Neurontin prescription. *Id.* In June 2017, she received block injections, reported her pain had lessened to a three out of ten in severity, and showed an improved range of motion in her cervical neck. *Id.* Further, though she reported muscle numbness, she had negative straight leg-raising tests and full motor strength. *Id.*

The ALJ observed that the record showed no diminishment in Brucelas-Rodriguez's physical ability until September 2018. *Id.* At that time, she had a reduced range of motion in the cervical and lumbar spines and a slow gait. *Id.* However, she did not use an aid to ambulate, retained normal motor and sensory functions, and had no atrophy in her hands or extremities. *Id.* She could pinch, grasp, and write, and had negative straight leg-raising tests, negative Spurling tests, and normal reflexes. *Id.* Accordingly, the ALJ found she could occasionally climb ramps and stairs; frequently stoop; occasionally balance, kneel, crouch, or crawl; frequently feel, handle, and finger bilaterally; frequently reach overhead bilaterally; and frequently reach in all other directions bilaterally. *Id.* The ALJ further noted test results in the record showed no significant diminishment in Brucelas-Rodriguez's musculoskeletal disorders relating to her hands, neck, and back. *Id.* (citing Tr. 820–21, 1247, 1249, 1384, 1399).

The ALJ next found Brucelas-Rodriguez's superficial venous insufficiency was no more than moderate in nature and did not prevent her from ambulating. *Id.* (citing Tr. 1094, 1337–38).

Based on medical records from September 2016 to September 2018, she then found Brucelas-Rodriguez could carry or lift 10 pounds occasionally and less than 10 pounds frequently. *Id.*

As for Brucelas-Rodriguez's depression, the ALJ restated much of her findings under the Listing 12.04 paragraph B criteria discussed above. Tr. 87–89. The ALJ cited May 2017 progress notes showing Brucelas-Rodriguez sought treatment for depression but had no prior psychiatric treatment. Tr. 87 (citing Tr. 1034–37). Further, the ALJ noted Brucelas-Rodriguez had a coherent, logical, and relevant thought process; denied suicidal thoughts and hallucinations; and had regular immediate, recent, and remote memory. *Id.* (citing Tr. 1033). The ALJ then stated Brucelas-Rodriguez did not show worsening symptoms following May 2017. *Id.* She cited an August 2018 psychiatric evaluation during which Brucelas-Rodriguez reported difficulty concentrating and remembering, but also reported she only took medication for her symptoms, did not receive counseling, and had no history of hospitalizations or emergency room visits. *Id.* (citing Tr. 1209). Further, the ALJ found Brucelas-Rodriguez had normal speech; a cooperative attitude; and a logical, coherent, and relevant thought process. *Id.* (citing Tr. 1211). The ALJ observed Brucelas-Rodriguez could remember three out of five pairs of words immediately and after five minutes, local news topics, and dates and details of her medical history. Tr. 87–88 (citing 1211). The ALJ next noted that Brucelas-Rodriguez had difficulties with the serial sevens test, performed adequately in the similar words test, could repeat the months of the year forwards and backwards, and could perform simple calculations. Tr. 88 (citing 1212).

The ALJ also stated that May 2018 treatment notes showed Brucelas-Rodriguez had difficulties with attention and memory, but also had appropriate thought content and denied suicidal thoughts. *Id.* (citing 1222). Further, July 2018 treatment notes stated Brucelas-Rodriguez was depressed, but had a coherent, logical, and relevant thought process, good immediate memory,

and regular recent and remote memory. *Id.* (citing 1300). October 2018 treatment notes described her depression as recurrent, but without psychotic features. *Id.* (citing Tr. 1289). And March 2019 treatment notes stated she had problems with concentration, but no issue with immediate, recent, and remote memory. *Id.* (citing 1267). They also stated Brucelas-Rodriguez denied perceptual disturbances. *Id.* The ALJ found these findings supported a determination that Brucelas-Rodriguez retained significant ability in attention, concertation, and memory needed to perform simple, routine, and repetitive tasks. *Id.*

The ALJ next found Brucelas-Rodriguez could perform simple, routine, and repetitive tasks. *Id.* She noted Brucelas-Rodriguez's self-reports showed that, while she did not drive, she could use a phone, groom herself, prepare her own meals, and manage her medications. *Id.* (citing Tr. 1211). The ALJ cited the same evaluations and medical notes discussed above showing that Brucelas-Rodriguez had a coherent, logical, and relevant thought process; denied suicidal thoughts and hallucinations; and had regular immediate, recent, and remote memory. *Id.*

The ALJ also found Brucelas-Rodriguez's testimony inconsistent with her statements during her August 2018 psychiatric consultative examination because she testified she lies down all day, does not cook, and does not shop for groceries. *Id.* (citing Tr. 111). However, during her consultative examination, she said she had no issues using a telephone, self-grooming, preparing her own meals, or managing her own medications. *Id.* (citing Tr. 1211).

Turning to opinion evidence, the ALJ considered persuasive the state agency consultants' determination that Brucelas-Rodriguez could lift or carry 20 pounds occasionally and ten pounds frequently. Tr. 89. However, the ALJ ultimately credited Brucelas-Rodriguez's statements regarding her difficulties walking to find that she could only lift or carry ten pounds occasionally and less than ten pounds frequently. *Id.* The ALJ found persuasive the neurological consultative

examiner's opinion that Brucelas-Rodriguez could sit, stand, walk, and handle and lift objects. *Id.* The ALJ noted the consultative examiner examined Brucelas-Rodriguez twice, with more than one year between each examination, and each exam revealed similar results. *Id.* Specifically, the ALJ found the opinions were consistent in finding Brucelas-Rodriguez did not use an aid to ambulate, had normal motor and sensory functions, had no atrophy in her hands or extremities, had negative straight leg-raising tests, had negative Spurling tests, and normal venous vascular studies showed no evidence of deep venous thrombosis. *Id.* (citing Tr. 1338). The ALJ found this consistent with June 2017 treatment notes showing Brucelas-Rodriguez felt better after receiving spinal injections, had negative straight leg-raising tests, and demonstrated full motor strength. *Id.* (citing Tr. 993).

Next, the ALJ found persuasive Dr. June Jiménez's opinion that Brucelas-Rodriguez's major depressive disorder and generalized anxiety disorder did not meet or satisfy Listings 12.04A and 12.06. *Id.* The ALJ found Dr. Jiménez's opinion persuasive because she is a medical expert familiar with the Social Security Administration's regulations, and was able to review the entire record. *Id.* Additionally, the ALJ noted Dr. Jiménez cited specific evidence from the record supporting her opinion and this opinion was consistent with evidence in the record. *Id.*

The ALJ then went on to find at Steps Four and Five that Brucelas-Rodriguez could no longer perform her past relevant work as a salesclerk or telephone operator, but that she could perform jobs existing in significant numbers in the national economy. Tr. 90–91. These determinations are not at issue here. As a result, the ALJ concluded that Brucelas-Rodriguez was not disabled under the Act. Tr. 92.

The Appeals Council denied review, Tr. 1, and this action followed.

## DISCUSSION

Brucelas-Rodriguez contends the ALJ failed to properly evaluate her physical RFC, her mental RFC, and the effect of her prescribed medications. Dkt. 17. I address each argument below.

### I.      Physical RFC

Brucelas-Rodriguez argues the ALJ inaccurately determined her physical RFC because the ALJ (1) disregarded her testimony about how her symptoms limited her ability to do work-related activities; (2) did not explain why she awarded more weight to a 2016 examination when a 2018 examination showed worsening symptoms; and (3) did not discuss the medical evidence from Brucelas-Rodriguez's treating physicians. Dkt. 17 at 11–12. The Commissioner disagrees and argues the ALJ properly assessed the record. Dkt. 20 at 4–5. I address the parties' arguments below.

### A.  Consideration of Testimony

Brucelas-Rodriguez argues the ALJ disregarded her testimony as to how her symptoms limited her ability to do work-related activities. Dkt. 17 at 11. It is unclear what she means by this. As the Commissioner notes, Brucelas-Rodriguez acknowledged that the ALJ directly referenced her testimony on this issue. Dkt. 20 at 5 (citing Dkt. 17 at 11 n.3). The Commissioner also argues the ALJ was not required to discuss all of Brucelas-Rodriguez's testimony to show she considered it. *Id.* (citing *N.L.R.B. v. Beverly Enterprises-Massachusetts, Inc.*, 174 F.3d 13, 26 (1st Cir. 1999)) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts."); *see also Arrington v. Berryhill*, 2018 WL 818044, at *2 (1st Cir. Feb. 5, 2018).

No interpretation of Brucelas-Rodriguez's argument warrants remand. To the extent she argues the ALJ did not consider her testimony regarding her symptoms' effect on her ability to perform work-related activities, that argument is incorrect because, as Brucelas-Rodriguez acknowledges, the ALJ outlined this testimony in her decision. *See* Tr. 85. To the extent Brucelas-Rodriguez argues the ALJ dismissed her testimony as not credible, courts ordinarily "must defer to a credibility determination made by an ALJ who has heard claimant's testimony and considered claimant's demeanor." *Flood v. Colvin*, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016). Here, the ALJ determined Brucelas-Rodriguez's RFC after noting her lack of hospitalizations, ability to manage symptoms with noninvasive treatment, and a lack of evidence showing significant neurological diminishment. Tr. 84–85. Similarly, the *Flood* court found the ALJ's RFC determination was properly based on the claimant's conservative treatment history, improvement with treatment, lack of objective findings supporting the claimant's allegations of disabling restrictions, and the claimant's daily activities. 2016 WL 6500641, at *1. Because the ALJ considered Brucelas-Rodriguez's testimony and this court must defer to the ALJ's credibility determination, the ALJ's treatment of Brucelas-Rodriguez's testimony does not warrant remand.

**B. 2018 Examination**

Next, Brucelas-Rodriguez argues the ALJ improperly gave a July 2016 neuro-ophthalmologist examination greater weight than a 2018 examination without explaining why. Dkt. 17 at 11–12. The Commissioner contends the ALJ found both examinations persuasive. Dkt. 20 at 6 (citing Tr. 89). The ALJ noted the September 2018 examination was consistent with one in February 2017. Tr. 89. Further, she found it was consistent with a consultative examiner's finding that Brucelas-Rodriguez did not use "an aid to ambulate, had normal motor and sensory functions, had no atrophy in the hands or extremities, and had negative straight leg-raising tests, negative

Spurling tests, and normal reflexes." Tr. 89. The ALJ also found the September 2018 examination consistent with a June 2018 non-invasive lower extremity venous vascular study showing no evidence of deep venous thrombosis and June 2017 treatment notes showing Brucelas-Rodriguez felt better after receiving spinal injections, had negative straight leg-raising tests, and had full motor strength. *Id.*

The ALJ stated she based her determination of Brucelas-Rodriguez's physical RFC on the July 2016 neuro-ophthalmologist examination, the September 2018 examination, and a handful of other examinations in February, April, and June, 2017, and June 2018. Tr. 87. The ALJ discussed the September 2018 evaluation noting it showed Brucelas-Rodriguez had a reduced range of motion in the cervical and lumbar spines and a slow gait. Tr. 86. However, the ALJ noted she did not use an aid to ambulate; continued to have normal motor and sensory functions; had no atrophy in the hands or extremities; and could pinch, grasp, and write. *Id.* She also found Brucelas-Rodriguez had negative straight leg-raising tests, negative Spurling tests, and normal reflexes. *Id.* The ALJ then observed Brucelas-Rodriguez could "perform a wide range of postural and manipulative activities, such as occasionally climb ramps and stairs; frequently stoop, occasionally balance, kneel, crouch, or crawl; frequently feel, handle, and finger bilaterally; frequently reach overhead bilaterally; and frequently reach in all other directions bilaterally." *Id.*

It is not at all clear that the ALJ gave the July 2016 evaluation more weight than the September 2018 evaluation. Though she noted the September 2018 evaluation showed diminishments in Brucelas-Rodriguez's physical findings, she noted these "were only slight in nature." Tr. 86. Logically, the ALJ's analysis of two relatively similar examinations would lead to relatively similar results. Brucelas-Rodriguez also argues the ALJ disregarded the September 2018 examination by stating she was still not using an aid to ambulate. Dkt. 17 at 12. However, that

observation is not evidence the ALJ disregarded Dr. Boria's September 2018 examination. On the contrary, it comes from Dr. Boria's examination notes. Tr. 1218. Though Brucelas-Rodriguez may believe the ALJ relied too heavily on the fact that she walked without an aid, "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001). Accordingly, Brucelas-Rodriguez's argument that the ALJ inexplicably gave more weight to the July 2016 examination, as opposed to the September 2018 examination, does not warrant remand.

### C.  Treating Physician Evidence

Brucelas-Rodriguez next argues the ALJ erred because she never referenced treating physician Dr. Yadira Dacosta's certification stating that, due to her multiple sclerosis, she may present muscle fatigue, general weakness, imbalance, difficult walking, spasticity, urinary urgency and frequency, memory problems, and vision problems. Dkt. 17 at 12. The Commissioner argues the ALJ did not need to weigh Dr. Dacosta's statements about Brucelas-Rodriguez's potential symptoms. Dkt. 20 at 7. Further, the Commissioner responds that the ALJ properly relied on four less restrictive assessments completed by three different providers, because they were consistent with the record. Dkt. 20 at 5. Additionally, though some of the assessments in question limited Brucelas-Rodriguez to light work, the Commissioner notes the ALJ partially credited Brucelas-Rodriguez's testimony by limiting her to sedentary work. *Id.*

A medical opinion includes "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §404.1527(a)(1). "[M]edical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking,

lifting, seeing, and remembering instructions." SSR 96-5p, 1996 WL 374183 (July 2, 1996). For claims filed before March 27, 2017, an ALJ will give a treating source's medical opinion controlling weight if she finds the opinion "well-supported by medically accepted clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* §404.1527(c)(2). If the ALJ does not accord a treating source's opinion controlling weight, she must apply certain factors in determining what weight to give the opinion. *Id.* Those factors are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or contradict the medical opinion. §404.1527(c)(2)–(c)(6). An ALJ need not expressly address each factor identified by the regulations but must provide "good reasons" for the weight assigned to the treating source's opinion. *Bourinot v. Colvin*, 95 F. Supp. 3d 161, 177 (D. Mass. 2015); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The parties do not dispute that Dr. Dacosta is an acceptable medical source. Instead, the Commissioner argues Dr. Dacosta's certification only discusses Brucelas-Rodriguez's potential symptoms and is therefore not entitled to any deference from the ALJ. Dkt. 20 at 7. Dr. Dacosta's letter states, "[d]ue to the condition of Multiple Sclerosis, the patient may present muscle fatigue, general weakness, imbalance, difficulty walking, spasticity, urinary urgency and frequency, memory problems, vision problems, among other symptoms." Tr. 262. The document is a letter entitled "MRI Justification." *Id.* The ALJ did not address this evidence. There is no evidence Dr. Dacosta documented that Brucelas-Rodriguez experienced all the symptoms mentioned in her letter.

Given this lack of documentation, I find that this letter contains a diagnosis of Brucelas-Rodriguez's medical condition, multiple sclerosis, as well as general information about that disease. This diagnosis is a medical opinion while general information about the disease is not. *See* 20 C.F.R. §404.1527(a)(1). Because the ALJ did not mention this letter, there is no way to determine why it was discounted. Contrary to the regulations, the ALJ did not determine whether Dr. Dacosta's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [her] case record." *See* 20 C.F.R. § 416.927. She did not apply the factors outlined in the regulations in determining what weight to give the opinion. 20 C.F.R. §404.1527(c)(2)–(c)(6). She did not give "good reasons," or any at all, for the weight given to this opinion. Accordingly, the ALJ erred by failing to examine Dr. Dacosta's medical opinion.

"When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." *Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir. 2001) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Though the Commissioner argues substantial evidence nevertheless supports denying Brucelas-Rodriguez benefits, courts have previously warned they "will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion . . . ."); *Lewis v. Berryhill*, 680

F. App'x 646, 649 (10th Cir. 2017) ("Reversal and remand are necessary based on the absence of specific, legitimate reasons to reject [the treating physician]'s opinion.").

Nevertheless, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Martell-Rivera v. Comm'r of Soc. Sec.* (D.P.R. Sept. 23, 2021) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (further citations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)). I note that several courts have found an ALJ's failure to address a treating physician's opinion is not harmless because that failure makes it impossible to know whether the ALJ actually considered that opinion. *Kneeland v. Berryhill*, 850 F.3d 749, 761–62 (5th Cir. 2017); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014); *Lucus v. Saul*, 960 F.3d 1066, 1069–1070 (8th Cir. 2020). However, though the ALJ did not mention Dr. Dacosta by name, she thoroughly considered Brucelas-Rodriguez's multiple sclerosis diagnosis elsewhere in her opinion and it is unclear how Dr. Dacosta's mere mention of it would change the analysis. Tr. 81–82.

Moreover, even if Dr. Dacosta's mention of multiple sclerosis symptoms is a medical source opinion, the ALJ's failure to discuss it was harmless because it did not affect the ALJ's analysis. Dr. Dacosta stated Brucelas-Rodriguez may suffer from muscle fatigue, general weakness, imbalance, difficulty walking, spasticity, urinary urgency and frequency, memory problems, and vision problems. Tr. 262. Brucelas-Rodriguez argues Dr. Zaida Boria documented the manifestation of these symptoms. Dkt. 17 at 12. As mentioned above, the ALJ discussed Dr. Boria's findings in her RFC determination and found Brucelas-Rodriguez experienced only slight limitations resulting from these symptoms. Tr. 86. The ALJ's findings that Brucelas-Rodriguez experienced minor manifestations of the symptoms Dr. Dacosta mentioned is not necessarily inconsistent with Dr. Dacosta's opinion. It is inconceivable that Dr. Dacosta's mere mention of

these symptoms, without any elaboration, would change that analysis. And as discussed below, after considering two years of treating notes from Brucelas-Rodriguez's psychiatrist, the ALJ found the memory problems documented did not warrant a finding of disability. Brucelas-Rodriguez cites no other evidence of the symptoms Dr. Dacosta mentioned. Thus, even if the ALJ erred by failing to mention Dr. Dacosta's list of multiple sclerosis symptoms, the ALJ discussed the symptoms and limitations in Dr. Dacosta's letter and found them insufficient to render Brucelas-Rodriguez disabled based on more detailed information about those symptoms in the record. Accordingly, any failure by the ALJ to discuss that opinion was harmless.

## II.      Mental RFC

Brucelas-Rodriguez argues the ALJ improperly determined her RFC because she incorrectly determined that Brucelas-Rodriguez was not receiving psychiatric counseling, failed to accord Dr. Rodriguez Cay's medical opinions controlling weight, and overlooked evidence that Brucelas-Rodriguez suffered from memory, attention span, and concentration problems. I address each argument in turn and find that none warrants remand.

### A. Psychiatric Counseling

Brucelas-Rodriguez contends the ALJ wrongly found she was not receiving psychiatric counseling though she received psychiatric treatment from May 2017 to June 2019. Dkt. 17 at 15. The Commissioner responds that Brucelas-Rodriguez received psychiatric medication, not counseling and that the ALJ correctly observed Brucelas-Rodriguez received the former, but not the latter. Dkt. 20 at 9–10. The ALJ's conclusion references Dr. Santos's consultative examination report. Tr. 87 (citing Tr. 1209). The translation of that report shows that Dr. Santos uses psychiatric treatment to refer to medication. Tr. 384 Her finding that Brucelas-Rodriguez received no psychological treatment is an apparent reference to counseling. *Id.* The ALJ's conclusion that

Brucelas-Rodriguez received medication to treat her psychological condition, but not counseling, is thus supported by the record. Accordingly, it does not warrant remand.

### B.  Treating Physician Evidence

Brucelas-Rodriguez also argues the ALJ failed to accord controlling weight to her treating physician when weighing medical opinions to determine her mental RFC. Dkt. 17 at 15–16. She concedes that the ALJ noted observations from her treating physician, Dr. Jose Rodriguez Cay, that she suffered from a poor attention span, concentration problems, memory issues, and depression. *Id.* However, she argues the ALJ discounted these observations in favor of a consultative examiner's findings in violation of 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). *Id.* The Commissioner argues Dr. Rodriguez Cay's notes are not medical opinions as defined by the regulations, but objective observations and Brucelas-Rodriguez's subjective reports. Dkt. 20 at 10. The Commissioner also argues the ALJ properly concluded Brucelas-Rodriguez experienced a good response to the treatment she received and could perform various activities of daily living. *Id.* at 7–8. Further, he argues the ALJ's findings aligned with those of the impartial medical expert[1] who testified at Brucelas-Rodriguez's hearing. *Id.* at 8.

I discussed the treating physician rule above. The ALJ began her analysis of Brucelas-Rodriguez's depression by reviewing Dr. Rodriguez Cay's notes from May 2017. Tr. 87. The ALJ found Brucelas-Rodriguez had diminished attention and concertation, but a coherent, logical, and relevant thought process. *Id.* Further, she noted Brucelas-Rodriguez had denied suicidal thoughts and hallucinations. *Id.* Lastly, she observed Brucelas-Rodriguez had regular immediate, recent,

---

[1] I note Brucelas-Rodriguez's concern that the ALJ referred to a different medical expert than the one who testified at her hearing. Dkt. 17 at 15 n.4. However, the ALJ accurately summarized the testimony of the correct expert, Dr. Serrano. *Compare* Tr. 89 *with* Tr. 119. Thus, the ALJ's mistake is a scrivener's error that does not require reversal because it is apparent that the ALJ understood Dr. Serrano's testimony and analyzed it accordingly. *See James S. v. Saul*, 2019 WL 4862248, at *7 (D.R.I. Oct. 2, 2019) (collecting cases).

and remote memory. *Id.* The record supports the ALJ's summary. Tr. 304, 1033. The ALJ then noted the record showed no significant worsening of symptoms after May 2017. *Id.* This too is supported by the record. Tr. 1135, 1137, 1139, 1141, 1143, 1224, 1230, 1235, 1242, 1258–59, 1264, 1267, 1273, 1276–77, 1280, 1283–84, 1288–89.

Brucelas-Rodriguez argues the ALJ then disregarded Dr. Rodriguez Cay's notes in favor of the August 2018 consultative evaluation. Dkt. 17 at 15. I disagree. The ALJ thoroughly discussed Dr. Rodriguez Cay's notes and explicitly based her findings regarding Brucelas-Rodriguez's mental RFC on those notes. Tr. 88. Though the ALJ also referenced the August 2018 consultative evaluation in her discussion, she found that its results were consistent with Dr. Rodriguez Cay's notes. Tr. 88 (noting Brucelas-Rodriguez performed well on memory exercises during the August 2018 examination and that Dr. Rodriguez Cay's treatment notes from that time found she had a good memory). Thus, contrary to Brucelas-Rodriguez's contention, the ALJ deferred to the findings of her treating physician when determining her mental RFC.

## C. Brucelas Rodriguez's Evidence

Brucelas-Rodriguez believes the memory and attention span problems that Dr. Rodriguez Cay noted warrant finding she is disabled. Dkt. 17 at 15. As discussed, the ALJ examined Dr. Rodriguez Cay's notes and found Brucelas-Rodriguez's memory, which was regular at first, improved with treatment. Tr. 88. The ALJ thus determined Brucelas-Rodriguez could perform simple, routine, and repetitive tasks. *Id.* The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán*, 819 F.2d at 3. Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co.*, 305 U.S. at 229) (internal citation omitted). The ALJ's

interpretation of Dr. Rodriguez Cay's findings was reasonable even if the record could arguably justify concluding otherwise. Thus, the substantial evidence standard was met here. Accordingly, remand on this issue is unwarranted.

### III.     Medication Side Effects

Brucelas-Rodriguez lastly argues the ALJ failed to explain why she disregarded Brucelas-Rodriguez's testimony that her medication made her feel sleepy, slow, and dumb. Dkt. 17 at 17–18. The Commissioner contends the ALJ properly considered this testimony and was not required to accept it at face value. Dkt. 20 at 10–11. The record repeatedly states Brucelas-Rodriguez experienced no side effects from medication. Tr. 285, 290, 294, 364, 374, 377, 382, 400, 414, 428, 431, 435, 439, 992, 1447, 1449. And Brucelas-Rodriguez points to no contrary evidence beyond her testimony that she did. "The ALJ is not required to take the claimant's assertions of pain at face value." *Baez v. Comm'r of Soc. Sec.*, 2022 WL 17729299, at *7 (D.P.R. Dec. 16, 2022) (citing *Bianchi v. Sec'y of Health & Hum. Servs.*, 764 F.2d 44, 45 (1st Cir. 1985)). Further, there must be objective medical evidence from an acceptable medical source to find that a claimant is disabled. 20 C.F.R. § 404.1529(a). Because none exists, even if the ALJ erroneously failed to explain why she discounted Brucelas-Rodriguez's testimony regarding her medication side effects, such an error would be harmless and thus not warrant remand.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of July 2023.

S/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge